# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

SPRINT CORPORATION,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION and
UNITED STATES OF AMERICA,

*Respondents*.

T-MOBILE USA, INC.,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION and
UNITED STATES OF AMERICA,

*Respondents*.

On Petitions For Review Of Forfeiture Orders In
*In re Sprint Corp.*, File No. EB-TCD-18-00027700, FCC 24-42; and
*In re T-Mobile USA, Inc.*, File No. EB-TCD-18-00027702, FCC 24-43

## PETITIONERS' PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Helgi C. Walker
Russell B. Balikian
Zachary E. Tyree
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
hwalker@gibsondunn.com
rbalikian@gibsondunn.com
(202) 955-8500

*Counsel for Petitioners*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................ii

GLOSSARY .......................................................................................iv

INTRODUCTION AND RULE 40(B) STATEMENT ...............................1

STATEMENT OF THE CASE ...............................................................3

REASONS FOR GRANTING REHEARING ...........................................7

I.    The Panel Openly Split From The Fifth Circuit In Rejecting The Companies' Seventh Amendment And Article III Argument. ..................................................7

II.    The Panel Decision Conflicts With Supreme Court Precedent In Concluding That Device-Location Information Is CPNI—An Exceptionally Important Question...................................................14

    A.    Device-Location Information Does Not Fall Within The "Location" Component Of CPNI. ..............14

    B.    Device-Location Information Was Not Made Available Solely By Virtue Of The Carrier-Customer Relationship. .................................17

III.    The Penalties Exceed The Statutory Maximum—As The Companies Plainly Argued...........................................19

CONCLUSION .........................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Action for Children's Television v. FCC,*
59 F.3d 1249 (D.C. Cir. 1995) .......................................................... 11, 13

*AT&T Corp. v. FCC,*
323 F.3d 1081 (D.C. Cir. 2003) .............................................................. 9

*AT&T, Inc. v. FCC,*
149 F.4th 491 (5th Cir. 2025) ....................................... 1, 7, 8, 9, 10, 11

*Carpenter v. United States,*
585 U.S. 296 (2018) .............................................................................. 16

*Dubin v. United States,*
599 U.S. 110 (2023) ........................................................................ 15, 16

*FCC v. Fox Television Stations, Inc.,*
567 U.S. 239 (2012) ........................................................................ 10, 12

*Ill. Citizens Comm. for Broad. v. FCC,*
515 F.2d 397 (D.C. Cir. 1974) .............................................................. 13

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) .............................................................................. 20

*Mozilla Corp. v. FCC,*
940 F.3d 1 (D.C. Cir. 2019) ................................................................... 4

*SEC v. Jarkesy,*
603 U.S. 109 (2024) ...................................................................... 1, 8, 10

*United States v. Ne. Commc'ns of Wis., Inc.,*
608 F. Supp. 2d 1049 (E.D. Wis. 2008) ................................................. 9

*United States v. Stevens,*
691 F.3d 620 (5th Cir. 2012) ................................................................ 12

ii

*United States v. TravelCenters of Am.*,
597 F. Supp. 2d 1222 (D. Or. 2007)....................................................9, 12

*Verizon Comm'cns Inc. v. FCC*,
— F.4th —, 2025 WL 2609127 (2d Cir. Sept. 10, 2025)...........7, 11, 12

STATUTES

28 U.S.C. § 2344.........................................................................................12

28 U.S.C. § 2462.........................................................................................12

47 U.S.C. § 153.......................................................................................4, 17

47 U.S.C. § 222.........................................2, 4, 8, 14, 15, 16, 17, 18, 19

47 U.S.C. § 402.............................................................................................9

47 U.S.C. § 503.............................................................3, 4, 8, 10, 19

47 U.S.C. § 504.................................................................................8, 9, 11

REGULATIONS & ADMINISTRATIVE ORDERS

47 C.F.R. § 64.2010.....................................................................................4

33 FCC Rcd 12075 (2018)............................................................................4

33 FCC Rcd 311 (2018).................................................................................4

34 FCC Rcd 12824 (2019)............................................................................4

RULE

Fed. R. App. P. 40 .......................................................................................1

## GLOSSARY

| | |
|---|---|
| Communications Act | The Communications Act of 1934 |
| Companies | Petitioners T-Mobile USA, Inc. and Sprint Corp. |
| CPNI | Customer Proprietary Network Information |
| DOJ | Department of Justice |
| FCC | Federal Communications Commission |
| LBS | Location-Based Service |
| NAL | Notice of Apparent Liability |
| Orders | The forfeiture orders imposed on the Companies in *In re Sprint Corp.*, File No. EB-TCD-18-00027700, FCC 24-42 (released Apr. 29, 2024), and *In re T-Mobile USA, Inc.*, File No. EB-TCD-18-00027702, FCC 24-43 (released Apr. 29, 2024) |

## INTRODUCTION AND RULE 40(B) STATEMENT

In the orders under review (the "Orders"), the FCC imposed more than $92 million in civil forfeiture penalties on T-Mobile USA, Inc. and Sprint Corp. (the "Companies"). It did so over the Companies' objections that the penalties violate the constitutional right to a federal jury trial under *SEC v. Jarkesy*, 603 U.S. 109 (2024), and exceed the FCC's limited statutory authority over customer information.

A panel of this Court rejected the Companies' arguments in an Opinion that openly splits with the Fifth Circuit, is in tension with the Second Circuit's analysis, conflicts with Supreme Court precedent, and overlooks material factual and legal points. Rehearing of these exceptionally important questions is warranted. Fed. R. App. P. 40(b)(1)-(2).

In rejecting the Companies' jury-trial arguments, the panel acknowledged its disagreement with the Fifth Circuit, which held unconstitutional a materially identical forfeiture order involving AT&T. *AT&T, Inc. v. FCC*, 149 F.4th 491 (5th Cir. 2025). The FCC argued in both cases that to preserve jury-trial rights in an FCC forfeiture proceeding, a company must *violate* a final forfeiture order by refusing to

pay and awaiting a collection action by the U.S. Department of Justice ("DOJ"), rather than simply seeking judicial review of the order. The FCC insists this DOJ-initiated collection action—which may be filed years later, if ever—satisfies the constitutionally guaranteed jury-trial right, even though DOJ can file in courts that bar legal challenges to the FCC order. If a company instead seeks judicial review of that order, the FCC argues, the company has *waived* a jury trial.

The Fifth Circuit correctly rejected that argument, but the panel here accepted it. In doing so, the panel misapprehended the adverse consequences that flow from final FCC forfeiture orders, citing a statute addressing *non-final* notices of apparent liability ("NALs") that may (or may not) culminate in forfeiture orders. The Court should review these important jury-trial questions.

The Opinion also misconstrues the Communications Act of 1934 in ways that conflict with Supreme Court precedent. The panel endorsed the FCC's novel position that *all* information about a mobile device's location is customer proprietary network information ("CPNI") covered by 47 U.S.C. § 222, even when the device is not making a common-carrier voice call subject to Title II. The panel also overlooked that the

Companies undisputedly have *data-only* customers without *any* covered voice services.

Finally, the panel refused to address the Companies' argument that the penalties violated the $2 million inflation-adjusted statutory maximum for a "single act or failure to act." 47 U.S.C. § 503(b)(2)(B). The Companies' opening and reply briefs discussed this issue at length in a section titled "The Penalties Exceed the Statutory Maximum." Opening Br. 64-67 (A41-44); Reply Br. 32-33 (A46-47). FCC Commissioner Simington also dissented on this ground, JA53; the U.S. Chamber of Commerce addressed it as amicus, Chamber Br. 21-28; and the panel asked about it at argument. Even the FCC understood the Companies had argued that "they committed 'at most, a single, continuing failure to act.'" Response Br. 61. Yet the Opinion *sua sponte* declared that the Companies **forfeited** this $88 million argument.

For these reasons, panel rehearing or rehearing en banc is warranted.

## STATEMENT OF THE CASE

The Companies are wireless carriers that offer both voice and data services. A9. Wireless *voice* services are "'telecommunications services'

under Title II" of the Communications Act, and thus subject to "common carrier status." *Mozilla Corp. v. FCC*, 940 F.3d 1, 17 (D.C. Cir. 2019) (per curiam). By contrast, wireless *data* services—like Internet access and texting—are classified as "'information services' under Title I" and thus "exemp[t] from common carriage status." *Id.* at 17; *see* 33 FCC Rcd 311 (2018); 33 FCC Rcd 12075 (2018). Where, as here, a company offers both services, it is a Title II common carrier "*only* to the extent that it is engaged in providing telecommunications services." 47 U.S.C. § 153(51) (emphasis added).

The relevant Title II regulation implementing 47 U.S.C. § 222(a) requires telecommunications carriers to take "reasonable measures" to protect the confidentiality of CPNI. 47 C.F.R. § 64.2010(a). If a carrier violates that obligation, the FCC may impose a civil "forfeiture penalty." 47 U.S.C. § 503(b)(4). By statute, Congress capped a forfeiture for a "continuing violation" at $2,048,915 "for any single act or failure to act." *Id.* § 503(b)(2)(B); *see* 34 FCC Rcd 12824, 12828 (2019) (inflation adjustment).

Until 2019, the Companies operated programs that enabled customers to share device-location information with third-party location-

based-service ("LBS") providers. These providers offered valuable services like medical-emergency response (LifeAlert), roadside assistance (AAA), and bank-fraud prevention. A9-10; *see* JA210. Mobile devices periodically register with nearby signal towers when powered on, "even when the customer" is not on "a voice call or [using] data." JA126 ¶ 12; *see* A9. The Companies used location information tied to *that* passive registration data for their LBS programs. A9.

In May 2018, the *New York Times* reported that, from 2014-2017, one LBS provider (Securus) may have misused location information from all four major wireless carriers for unauthorized purposes. A11. The Companies responded by promptly terminating Securus's access to location information and, after further review, winding down their programs. A12-13.

On February 28, 2020, the FCC issued separate NALs against all four carriers. A13-14; JA121; JA362. (T-Mobile and Sprint subsequently merged.) The NALs focused on the overarching structure of the LBS programs, since the Securus incident itself fell outside the limitations period. The FCC claimed for the first time that *all* device-location information—not just call-related information—is CPNI, concluding that

the carriers failed to take "reasonable measures" to protect this information.  JA135-36 ¶ 43.  The FCC proposed more than $200 million in total penalties, including nearly $104 million against T-Mobile and Sprint, positing that continuing to operate the LBS programs after the news article amounted to "separate continuing violations" as to each remaining LBS provider.  JA148 ¶ 84.

The Companies filed written responses.  As relevant here, they argued that agency imposition of the penalties would violate the Seventh Amendment and Article III, device-location information is not CPNI, and the penalties exceeded the statutory cap for a single continuing violation.  A14; JA54; JA58; JA330.

In April 2024, by a 3-2 vote, the FCC issued Orders adopting the NALs, imposing penalties of over $80 million on T-Mobile and over $12 million on Sprint.  A15; JA39-40 ¶¶ 93-95.  Two Commissioners dissented.  Now-Chairman Carr explained that the Orders "plainly" exceeded the FCC's authority under § 222.  JA50.  Commissioner Simington said the massive penalties violated the "statutory maximum" because each carrier committed, at most, a "single, systemic failure" to shut down its LBS program.  JA53.  The carriers paid the forfeitures

under protest and petitioned for review. AT&T filed in the Fifth Circuit; Verizon in the Second; and the Companies in this Circuit. *See AT&T*, 149 F.4th 491 (granting petition); *Verizon Comm'cns Inc. v. FCC*, — F.4th —, 2025 WL 2609127 (2d Cir. Sept. 10, 2025) (denying petition).

On August 15, 2025, the panel denied the Companies' petitions. It rejected the Seventh Amendment and Article III argument, holding that the Companies waived their jury-trial rights by petitioning for review rather than refusing to pay and awaiting a collection action. A18-23. It held that all device-location information constitutes CPNI. A26-32. And it upheld the FCC's penalties, declining to reach the statutory-maximum argument because the Companies purportedly "forfeited" it. A36-37 & n.6.

## REASONS FOR GRANTING REHEARING

### I. The Panel Openly Split From The Fifth Circuit In Rejecting The Companies' Seventh Amendment And Article III Argument.

The panel sidestepped *Jarkesy*, which compels the conclusion that the Orders violate the Seventh Amendment and Article III. As the Fifth Circuit held, the Seventh Amendment's jury-trial guarantee applies because civil penalties are classic legal remedies intended to "'punish or

deter'" rather than '"restore the status quo,'" *AT&T*, 149 F.4th at 498, and the FCC's claim that the Companies failed to take "reasonable measures" to protect CPNI "is analogous to common law negligence," *id.* The public-rights exception to Article III adjudication is inapplicable, moreover, because this case does not implicate any "'historic categories'" of cases adjudicated outside the courts. *Id.* at 500 (quoting *Jarkesy*, 603 U.S. at 130); Opening Br. 28-34.

Rather than addressing these points, the panel concluded that the Companies "waived" their jury-trial rights by seeking review of the Orders in this Court instead of refusing to pay the fine and awaiting a DOJ collection action under 47 U.S.C. § 504. A19. That conclusion is incorrect, and it directly conflicts with the Fifth Circuit's *AT&T* decision rejecting an *identical* argument. 149 F.4th at 503.

FCC forfeiture orders are final agency actions. 47 U.S.C. § 503(b). The Orders here, for example, held that the Companies violated § 222 and ordered them to pay fines "within thirty (30) calendar days." JA47. If a telecommunications carrier violates such a directive by refusing to pay, DOJ may file a collection action "in any district through which the line or system of the carrier runs"—which, for a nationwide carrier,

means virtually any judicial district. 47 U.S.C. § 504(a). Some courts allow carriers to challenge the underlying forfeiture order's legality in § 504 collection actions. *E.g.*, *United States v. Ne. Commc'ns of Wis., Inc.*, 608 F. Supp. 2d 1049, 1053-54 (E.D. Wis. 2008). Others do not, limiting review to "enforcement" questions. *E.g.*, *United States v. TravelCenters of Am.*, 597 F. Supp. 2d 1222, 1227 (D. Or. 2007).

Congress provided a different way to challenge FCC orders—one that does not require violating them. As this Court has recognized, regulated entities can pay the forfeiture under protest and petition for review in the Court of Appeals under 47 U.S.C. § 402(a). *AT&T Corp. v. FCC*, 323 F.3d 1081, 1083-85 (D.C. Cir. 2003). The Companies did that here.

The Fifth Circuit correctly held that a party does not "waive" its jury-trial right by invoking § 402(a) to petition for review of a forfeiture order denying that right—and that a contrary holding would be untenable. *AT&T*, 149 F.4th at 503. Requiring a party to refuse to pay a forfeiture order and await a collection action has negative "real-world impacts." *Id.* The FCC must consider an unchallenged forfeiture order as part of the company's "history of prior adjudicated offenses in imposing

future penalties." *Id.* (citing 47 U.S.C. § 503(b)(2)(E)). The unchallenged order will "cause reputational harm." *Id.* (citing *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 256 (2012)). And awaiting a collection action is risky because it requires permanently forgoing a petition for review under § 402(a), without any guarantee the order can be challenged in a § 504 collection action. The constitutional right to a federal jury trial cannot be conditioned on these injurious consequences.

More fundamentally, an *after-the-fact* jury trial cannot replace an "initial adjudication" in federal court. *Jarkesy*, 603 U.S. at 128. The FCC has cited "no authority" suggesting that the jury-trial right "is honored by a trial occurring after an agency has already found the facts, interpreted the law, adjudged guilt, and levied punishment." *AT&T*, 149 F.4th at 503.

The panel thus disagreed with the Fifth Circuit in holding that the Companies somehow "voluntarily surrendered" their jury-trial rights by seeking review under § 402(a), as circuit precedent approved. A16. According to the panel, to preserve their jury-trial rights, the Companies should have "'do[ne] nothing at all'" and waited to see if and where DOJ

sued.  A21 (quoting *Action for Children's Television v. FCC*, 59 F.3d 1249, 1261 (D.C. Cir. 1995)).

Rehearing is especially appropriate because the Opinion misapprehends the statutory scheme and the Companies' arguments. The panel cited 47 U.S.C. § 504(c) to hold that it is "plainly incorrect" that the FCC could use unpaid orders against the Companies in future proceedings.  A22.  But as discussed at argument, § 504(c) bars reliance only on a *non-final* "notice of apparent liability," which is essentially a charging document.[1]  *See Verizon*, 2025 WL 2609127, at *1 n.1 (NALs "are preliminary").  Here, the FCC did not merely issue NALs; it went on to issue *final forfeiture orders*, and *those* are the Orders "in question" here.  *Contra* A23 n.5.  Nothing prohibits the FCC in the future from relying on its conclusions that the Companies violated the law.

The panel also departed from both the Fifth Circuit and Supreme Court precedent in dismissing reputational harm as a "remote risk."  A23. As the Fifth Circuit recognized, customers care about these matters, which "can be widely publicized and reported."  *AT&T*, 149 F.4th at 503.

---

[1] *See* Oral Argument at 11:13-17:29, https://media.cadc.uscourts.gov/recordings/docs/2025/03/24-1224.mp3.

That is why *Fox* rejected a mootness argument based in part on reputational harm from an FCC order. 567 U.S. at 255-56.

Making the panel decision a true outlier, the Second Circuit at least acknowledged that forgoing direct review and awaiting a collection action *does* have these "'real-world impacts,'" yet discounted them as not "implicat[ing] the Seventh Amendment." *Verizon*, 2025 WL 2609127, at *15. But, under that view, the Companies *cannot* invoke their federal jury-trial rights unless they suffer these harms—which is an impermissible burden on constitutional rights.

More than that, the panel failed to grapple with the impossible predicament its waiver holding creates for carriers facing forfeiture orders. Carriers have only 60 days to decide whether to follow the panel's suggestion to "'do nothing'" and await a collection action, A18; thereafter, they lose the ability to seek direct review under § 402(a), 28 U.S.C. § 2344. Yet a carrier has no way to know at that time whether it will be able to challenge the order's legal validity in a § 504 action (if one is filed). *See id.* § 2462 (five-year limitations period for § 504 collection action). Several courts **prohibit** such challenges, *e.g.*, *United States v. Stevens*, 691 F.3d 620, 622 (5th Cir. 2012) (factual challenges only); *TravelCenters*

*of Am.*, 597 F. Supp. 2d at 1227 (enforcement matters only), and most courts have not addressed the issue. While "*this court* has not adopted" that rule, § 504's nationwide-venue provision means "the Commission could have brought an enforcement action against the Carriers in a jurisdiction where defendants are not permitted to present legal defenses." A20 (emphasis added).

This is no "'hypothetical,'" as the panel asserted. A20. It is an untenable reality created by the panel decision: Carriers must either give up their jury-trial rights by seeking § 402(a) direct review, or risk DOJ filing a § 504 collection action in a forum that prohibits legal challenges. Carriers cannot ensure both their Seventh Amendment and Article III rights.

None of this is supported by circuit precedent. This Court's 30-year-old decision in *Action for Children's Television* did not involve a forfeiture order and did not address the effect of such orders on future penalties. 59 F.3d at 1261-62; *see* Reply Br. 12 n.1. And the 1974 decision in *Illinois Citizens Committee for Broadcasting v. FCC*, involved a regulated party that paid the forfeiture and did *not* seek review. 515 F.2d 397, 401, 405-06 (D.C. Cir. 1974); *see* Reply Br. 13 n.2.

The panel's decision errs in splitting from the Fifth Circuit and overlooks important issues. Rehearing is warranted.

## II. The Panel Decision Conflicts With Supreme Court Precedent In Concluding That Device-Location Information Is CPNI—An Exceptionally Important Question.

Under § 222, information is CPNI subject to FCC authority only if it satisfies two requirements. First, it must "relat[e] to the quantity, technical configuration, type, destination, *location*, and amount *of use of a telecommunications service*." 47 U.S.C. § 222(h)(1) (emphasis added). Second, it must be made available to the carrier "*solely* by virtue of the carrier-customer relationship." *Id.* (emphasis added). The panel held that device-location information unrelated to customer calls "fits the statutory definition." A27. This holding conflicts with the statute and Supreme Court precedent, and will have broad consequences.

### A. Device-Location Information Does Not Fall Within The "Location" Component Of CPNI.

The "location" component of CPNI "covers a particular type of data known as 'call location information'—namely, the customer's location *while making or receiving a voice call*." JA51 (Carr dissent). It does not

(as the panel held) extend to "all location information collected by a carrier, irrespective of particular calls." JA51.

That limitation follows from the statutory text: "location … of use of a telecommunications service." 47 U.S.C. § 222(h)(1)(A).[2] As the panel recognized, "telecommunications service" refers to "voice services"—*i.e.*, "phone calls." A26. And the term "use" "'impl[ies] action and implementation,'" not something "'passive,'" like a device's automatic, background registration with a network tower. *Dubin v. United States*, 599 U.S. 110, 118-19 (2023). Information about the location of a device not engaged in a phone call is simply not covered.

Statutory context and regulatory history confirm this interpretation. Congress added the word "location" to § 222(h)(1)(A) in a 1999 amendment that elsewhere referred to the same information as "call location information," 47 U.S.C. § 222(d)(4), (f)(1). Moreover, prior to the NALs, the FCC had *never* claimed that CPNI includes location information unrelated to calls. Opening Br. 27-28.

---

[2] The relevant phrase is "location … of use of a telecommunications service" because "use" modifies each noun listed in the CPNI definition, Opening Br. 29-32, as the panel assumed, A29.

The panel's contrary interpretation is unpersuasive and conflicts with Supreme Court precedent. The panel asserted that "a customer 'uses' a telecommunications service whenever his or her device connects to the carrier's network" because those passive pings "ma[ke] [it] possible" to "send and receive calls." A27, 29. But the same background process also makes it possible to obtain *data* services, which are *not* "telecommunications services." *Supra*, at 3-4. Section 222 is limited to information about the "use of a telecommunications service," 47 U.S.C. § 222(h)(1)(A)—*i.e.*, actively making or receiving a *voice* call. Network registration while a device is idle or engaged in a data session is not the "use" of those services.

The Supreme Court recently made that same point in *Carpenter v. United States*, 585 U.S. 296 (2018). The Court explained that device-location data is constantly transmitted based on cell-tower pings "even if the owner is *not using* one of the phone's features." *Id.* at 300-01 (emphasis added); *see id.* at 315 (the case was "not about 'using a phone'" but about data compiled based on "physical presence"). Likewise, the "location … *of use* of a telecommunications service" is where a device makes or receives a Title II voice call. *See Dubin*, 599 U.S. at 118-19

("use" "'impl[ies] action and implementation'").  The panel's contrary reasoning conflicts with *Carpenter* and *Dubin*.

### B.    Device-Location Information Was Not Made Available Solely By Virtue Of The Carrier-Customer Relationship.

Device-location information also was not "made available to the carrier … *solely by virtue of* the carrier-customer relationship." 47 U.S.C. § 222(h)(1)(A) (emphasis added).  A "carrier" is a "provider of telecommunications services"—*i.e.*, Title II *voice* services, not Title I *information* (data) services.  *Id.* § 153(11), (24), (51), (53).  A company is a carrier "only to the extent that it is engaged in providing telecommunications services."  *Id.* § 153(51).

The "carrier-customer relationship" regulated by § 222 (again, a Title II provision) accordingly cannot reach Title I data services.  Yet the device-location information on which the LBS programs relied undisputedly was generated whenever a mobile device was powered on, supporting *both* data and voice services.  JA165; JA215; JA407-08; JA427; *see* JA10 ¶ 23.  Section 222 thus cannot apply.

The panel's contrary conclusion overlooks the distinction between Title I and Title II services that permeates the Communications Act.  It

is true that "the Carriers did not stop being carriers because they were also information-service providers" and that some customers "enter a single contract … for both telecommunications and information service." A31-32. But that only confirms the carriers wear two hats subject to different regulatory regimes. CPNI is limited to information made available "***solely by virtue of***" the voice-services relationship. Call-location information qualifies; device-location information does not.

Importantly, the panel also overlooked the undisputed fact that the Companies have *data-only* customers who had equal access to LBS programs. JA50; Opening Br. 26, 52-53; Reply Br. 25. Neither the panel nor the FCC suggested that device-location information for data-only devices came *solely* because the Companies provided voice services, as § 222 requires.

\* \* \*

The broad construction of CPNI endorsed by the panel vastly expands the FCC's "limited and circumscribed" jurisdiction and exposes carriers to liability for massive swaths of data—*all* information relating to a device's location—as now-Chairman Carr explained in dissent.

JA50. This statutory question is of exceptional importance for all telecommunications companies. Rehearing is warranted.

## III. The Penalties Exceed The Statutory Maximum—As The Companies Plainly Argued.

Finally, the panel *sua sponte* found that the Companies forfeited their argument that the FCC's $80 million and $12 million penalties exceeded the $2 million statutory maximum. A37 n.6 (Companies only "gesture[d]" at this argument). That conclusion is irreconcilable with the briefing and deprives the Companies of a merits resolution on an ***$88 million issue***.

Congress capped the statutory penalties "for any single act or failure to act" at an inflation-adjusted $2 million. 47 U.S.C. § 503(b)(2)(B). Throughout the agency proceedings, the Companies argued that the Orders exceed that statutory cap. The FCC rejected this argument, JA34-36, so the Companies addressed it at length on appeal.

Both the Opening and Reply Briefs included multi-page sections titled "The Penalties Exceed The Statutory Maximum," quoting the statutory text and explaining why continuing to operate the LBS programs, in purported violation of § 222, amounted to a "single, continuing failure to act" under § 503(b)(2)(B). Opening Br. 64-67 (A41-

44); Reply Br. 32-33 (A46-47). The Companies refuted the FCC's contrary interpretation, explaining that the statute "speaks in terms of an 'act'" that cannot be disaggregated, Opening Br. 65-66 (A42-43); the FCC has no "discretion" (A37 n.6) in applying this text, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394-95 (2024). The Companies elaborated that the FCC's reading, if accepted, would allow **hundreds of trillions of dollars** in penalties in **this case alone**, which is not "reasoned statutory interpretation" and is "untethered to the statutory text." Opening Br. 66-67 & n.22 (A43-44). Commissioner Simington dissented on this issue, and the Companies quoted his dissent. *Id.* at 66-67 (A42-44) (quoting JA53). The Chamber amicus brief argued the FCC's interpretation was "plainly wrong," Chamber Br. 21-28; the Companies cited that brief on reply (at 32-33) (A46-47). This was not "cursory" treatment. A37 n.6.

Indeed, the FCC responded on the merits to the statutory-cap argument, asserting the conduct constituted more than "a single violation." Response Br. 61 (citing Opening Br. 65). The FCC never suggested the Companies *forfeited* the argument.

Counsel further discussed the statutory limit in opening and during rebuttal at argument. Oral Argument at 1:39-2:15; 45:13-46:18. One

panelist even asked the FCC's counsel about the cap. *Id.* at 30:26-45 (Garcia, J.) ("The statute talks about a 'single act or failure to act.' How do you explain why the relevant 'act' here is third-party-by-third-party, as opposed to the overall failure to have safeguards?").

There is no basis to sweep this substantial and clearly articulated argument under the rug. The panel or the Court should address this important issue and conclude that the Orders violated § 503(b)(2)(B).

## CONCLUSION

The Court should grant panel rehearing or rehearing en banc.

Dated: September 22, 2025

Respectfully submitted,

/s/ *Helgi C. Walker*
Helgi C. Walker
Russell B. Balikian
Zachary E. Tyree
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
hwalker@gibsondunn.com
rbalikian@gibsondunn.com
(202) 955-8500

*Counsel for Petitioners*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with Federal Rule of Appellate Procedure 40(d)(3) because this brief contains 3,860 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

Dated:  September 22, 2025

/s/ *Helgi C. Walker*
Helgi C. Walker
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504

*Counsel for Petitioners*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2025, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the D.C. Circuit and accomplished service by using the appellate CM/ECF system.

Dated: September 22, 2025

/s/ *Helgi C. Walker*
Helgi C. Walker