# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

SPRINT CORPORATION,

*Petitioner,*

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA,

*Respondents.*

T-MOBILE USA, INC.,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA,

*Respondents*.

On Petition for Review of Final Orders
of the Federal Communications Commission

## BRIEF OF CTIA – THE WIRELESS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF PETITIONERS' PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Joshua S. Turner
 *Counsel of Record*
Sara M. Baxenberg
Boyd Garriott
Stephen J. Conley
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
Jturner@wiley.law

September 29, 2025

*Counsel for* Amicus Curiae

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), *amicus curiae* states as follows:

## A.     Parties and *Amici*

Petitioners in these consolidated cases are T-Mobile USA, Inc. and Sprint Corporation.  Respondents are the Federal Communications Commission and the United States of America.  CTIA – The Wireless Association®, the Chamber of Commerce of the United States of America, the Electronic Privacy Information Center, the Center for Democracy & Technology, the Electronic Frontier Foundation, Privacy Rights Clearinghouse, and Public Knowledge are *amici curiae*.

## B.     Ruling Under Review

Petitioners seek direct review of the FCC's forfeiture orders in *In re Sprint Corp.*, File No. EB-TCD-18-00027700, FCC 24-42, and *In re T-Mobile USA, Inc.*, File No. EB-TCD-18-00027702, FCC 24-43, which were released on April 29, 2024.

## C.     Related Cases

The following cases are related: *AT&T, Inc. v. FCC*, No. 24-60223 (5th Cir.); and *Verizon Communications, Inc. v. FCC*, No. 24-1733 (2d Cir.).

Dated: September 29, 2025

*/s/ Joshua S. Turner*
Joshua S. Turner
*Counsel of Record for* Amicus Curiae

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to <u>Federal Rule of Appellate Procedure 26.1</u> and Circuit Rule 26.1, CTIA – The Wireless Association® hereby states that it is a trade association that represents the U.S. wireless communications industry and the companies throughout the mobile ecosystem that enable Americans to lead a 21st-century connected life. The association's members include wireless providers, device manufacturers, and suppliers, as well as apps and content companies. CTIA vigorously advocates at all levels of government for policies that foster continued wireless innovation and investment.

CTIA has no parent company, and no publicly held corporation has a 10% or greater ownership interest in CTIA.

Dated: September 29, 2025

*/s/ Joshua S. Turner*
Joshua S. Turner
*Counsel of Record for* Amicus Curiae

# CIRCUIT RULE 29(d) CERTIFICATE

*Amicus curiae* CTIA – The Wireless Association® certifies that a separate *amicus* brief is necessary. This brief provides the unique perspective of the broader wireless industry, which is directly impacted by the FCC's unprecedented statutory interpretation. It also offers historical legislative and regulatory context to help the Court assess the proper interpretation of the statutory definition of customer proprietary network information, and it expands upon the real-world impacts of the FCC's forfeiture orders. *Amicus curiae* is not aware of any other *amicus* brief offering this perspective.

Dated: September 29, 2025

*/s/ Joshua S. Turner*
Joshua S. Turner
*Counsel of Record for* Amicus Curiae

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT ....................................... ii

CIRCUIT RULE 29(d) CERTIFICATE................................................ iii

TABLE OF AUTHORITIES ...................................................................v

GLOSSARY.......................................................................................... vii

INTEREST OF *AMICUS CURIAE*..........................................................1

INTRODUCTION AND SUMMARY ....................................................1

ARGUMENT .........................................................................................3

    I.    The Panel's Erroneous Application Of The Seventh Amendment Warrants Rehearing............................................................................3

    II.    The Panel's Erroneous Interpretation Of The Communications Act Warrants Rehearing............................................................................6

        A.    The Panel Misconstrued The Statute's "Solely" Requirement...6

        B.    The Panel Misconstrued The Statute's "Location" Requirement. ......................................................................................................8

        C.    The Panel's Misreading Contradicts Congressional Intent, Will Burden Carriers, And Will Undermine Consumer Privacy......10

CONCLUSION......................................................................................13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*AT&T, Inc. v. FCC*,
149 F.4th 491 (5th Cir. 2025) ...................................................................2, 3, 4

*Dubin v. United States*,
599 U.S. 110 (2023)...........................................................................................9

*Feliciano v. Department of Transportation*,
145 S. Ct. 1284 (2025).....................................................................................10

*FTC v. AT&T Mobility LLC*,
883 F.3d 848 (9th Cir. 2018) ............................................................................7

*In re MCP No. 185*,
124 F.4th 993 (6th Cir. 2025) .......................................................................6, 7

*Mozilla Corp. v. FCC*,
940 F.3d 1 (D.C. Cir. 2019) ..............................................................................7

*National Association of Regulatory Utility Commissioners v. FCC*,
533 F.2d 601 (D.C. Cir. 1976)...........................................................................7

*SEC v. Jarkesy*,
603 U.S. 109 (2024)...........................................................................................4

**Statutes**

28 U.S.C. § 2344 ..................................................................................................5

28 U.S.C § 2462 ...................................................................................................5

47 U.S.C. § 153 .......................................................................................6, 7, 9, 10

*47 U.S.C. § 222 .........................................................................2, 6, 7, 8, 9, 10

47 U.S.C. § 503 ....................................................................................................3

---

[*] Authorities upon which *amicus curiae* chiefly relies are marked with asterisks.

47 U.S.C. § 504 ................................................................4

**Regulations**

47 C.F.R. Part 64, Subpart U ...........................................11

47 C.F.R. § 64.2010 .........................................................11

47 C.F.R. § 64.2011 .........................................................11

**Other Authorities**

S. Rep. No. 106-138 .....................................................10, 11

## GLOSSARY

| | |
|---|---|
| Companies | Petitioners T-Mobile USA, Inc. and Sprint Corp. |
| CPNI | Customer Proprietary Network Information |
| CTIA | CTIA – The Wireless Association® |
| DOJ | U.S. Department of Justice |
| FCC or Commission | Federal Communications Commission |
| Orders | The forfeiture orders imposed in *In re Sprint Corp.*, File No. EB-TCD-18-00027700, FCC 24-42 (released Apr. 29, 2024), and *In re T-Mobile USA, Inc.*, File No. EB-TCD-18-00027702, FCC 24-43 (released Apr. 29, 2024) |

# INTEREST OF *AMICUS CURIAE*[1]

CTIA – The Wireless Association® ("CTIA") files this brief in support of T-Mobile USA, Inc. and Sprint Corporation's (the "Companies") petition for panel rehearing and rehearing en banc. CTIA represents the U.S. wireless industry and the companies throughout the mobile ecosystem that enable Americans to lead a 21st-century connected life. The association's members include wireless providers, device manufacturers, and suppliers, as well as apps and content companies. CTIA advocates at all levels of government for policies that foster continued wireless innovation and investment.

CTIA has an interest in this proceeding because its members, including the Companies, are regulated by Respondent Federal Communications Commission ("FCC" or "Commission"). Accordingly, *amicus* has an interest in the FCC's interpretation and enforcement of its authorizing statutes.

## INTRODUCTION AND SUMMARY

This case concerns a $92 million penalty levied against the Companies for allegedly inadequately safeguarding location data. The Companies challenged the Orders under review for, among other things, violating the Seventh Amendment and

---

[1] This brief is filed by unopposed motion. No counsel for any party authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of the brief. *See* <u>Fed. R. App. P. 29(a)(4)(E)</u>.

exceeding the Commission's authority under the Communications Act.  The panel wrongly rejected both challenges.

On the Seventh Amendment, the panel erred by holding that, under the Orders, "no legal rights are determined and no legal relief is awarded." A22.[2]  That blinks reality.  The Orders declare that each company "violated Section 222 of the [Communications] Act" and then say:  "**IT IS ORDERED**" that each company "**IS LIABLE FOR A MONETARY FORFEITURE** in the amount" specified.  JA46 (¶¶ 108-09); JA322 (¶¶ 85-86) (emphases in original).  That the government can bring a separate action to collect these forfeitures if the Companies refuse to pay does not strip these binding declarations of legal effect.  Indeed, noncompliance carries serious consequences, as the Fifth Circuit held in vacating a related forfeiture order.  *See AT&T, Inc. v. FCC*, 149 F.4th 491 (5th Cir. 2025).

Next, the panel misread the Communications Act's definition of customer proprietary network information ("CPNI") in two ways.  *First*, the panel wrongly held that CPNI covers information obtained by virtue of *both* a carrier-customer relationship *and* an information-service-provider-customer relationship, even though the definition reaches only information made available "*solely by virtue of the carrier-customer relationship*."  47 U.S.C. § 222(h)(1)(A) (emphasis added).  *Second*, the panel wrongly held that CPNI includes information collected even where

---

[2] *A* citations refer to the addendum to the rehearing petition.

a subscriber does not "use" a "service" to place a call.  Together, these errors expand the FCC's authority to reach data never contemplated by Congress, create new, burdensome compliance obligations for providers, and undermine consumer privacy.

The Court should grant rehearing.

## ARGUMENT

### I.  THE PANEL'S ERRONEOUS APPLICATION OF THE SEVENTH AMENDMENT WARRANTS REHEARING.

Rehearing is warranted because the panel's failure to safeguard Petitioners' Seventh Amendment rights raises a "question[] of exceptional importance," Fed. R. App. P. 40(b)(2)(D), that directly "conflicts with an authoritative decision of another United States court of appeals[.]"  *Id.* at 40(b)(2)(C); *see AT&T, Inc. v. FCC*, 149 F.4th 491 (5th Cir. 2025).  The panel found no Seventh Amendment violation because the Companies could "obtain a jury trial before suffering any legal consequences" by waiting for the Department of Justice ("DOJ") to bring a collection suit.  A18-19.  That was an error.

The panel is wrong that "no legal rights are determined and no legal relief is awarded" under the Orders.  A22.  The Communications Act provides that enforcement targets "*shall be liable*" when they violate the law, as "determined by the Commission."  47 U.S.C. § 503(b)(1) (emphasis added).  And "[t]he amount of such forfeiture penalty shall be assessed by the Commission."  *Id.* § 503(b)(2)(E).

As soon as the forfeitures are levied, they "shall be payable into the Treasury of the United States." *Id.* § 504(a).  Reflecting this, the Orders are binding on their face, providing: "**IT IS ORDERED**" that each company "**IS LIABLE FOR A MONETARY FORFEITURE** in the amount" specified.  JA46 (¶¶ 108-09); JA322 (¶¶ 85-86) (emphases in original).

The Orders are no less legally binding because the DOJ may pursue collection in "a trial de novo" if the subjects refuse to pay.  A19.  By the time the DOJ "prosecute[s] for the recovery of forfeitures" (if ever), 47 U.S.C. § 504(a), "the Commission" has already "acted as prosecutor, jury, and judge," *AT&T*, 149 F.4th at 503, handing down a binding determination of liability.  Even if a court may one day reverse that determination, that cannot remedy that there is "no involvement by an Article III court in the initial adjudication." *SEC v. Jarkesy*, 603 U.S. 109, 128 (2024).

The panel also failed to appreciate the "real-world impacts" of violating the Orders. *AT&T*, 149 F.4th at 503.  As the Fifth Circuit explained, these Orders "are not mere suggestions." *Ibid.*  They "cause reputational harm to carriers" by declaring that they violated the law and are subject to substantial penalties. *Ibid.*  Far from a "thin reed" or "remote risk," A23, a binding command to pay *tens of millions of dollars* undermines access to credit and investment and makes it difficult to close transactions or capitalize on business opportunities.  These consequences also flow

from direct reporting obligations to other regulators such as the Securities and Exchange Commission and "Team Telecom," an executive branch committee that makes recommendations on telecommunications-related transactions involving foreign ownership.

Forfeiture orders also impose real costs on day-to-day operations, even if a collection action is never pursued. For example, the targets of these orders must decide whether to establish reserves sufficient to pay the mandated forfeiture. They must also decide whether to build compliance programs based on FCC legal theories that may ultimately be overturned.

These costs illustrate the unworkability of construing direct review as a "waiver" of a party's jury-trial rights. A party has only 60 days to seek direct review of a forfeiture order, *see* 28 U.S.C. § 2344, while the Government has *five years* to initiate a collection proceeding, *id.* § 2462. That leaves an enforcement target in the unreasonable position of trying to decide quickly whether to pay the forfeiture so that it can pursue a direct-review proceeding, or roll the dice by flouting the order and waiting to vindicate its rights in a DOJ action that might never come.

A party electing direct review has not "waived" its Seventh Amendment right, *contra* A19, because the alternative the panel proposes under Section 504 does not actually give parties access to that right. Any future exercise of the right would

occur only at the whim of the government, and maybe not at all. That is a fundamental constitutional flaw in the statutory procedure.

## II. THE PANEL'S ERRONEOUS INTERPRETATION OF THE COMMUNICATIONS ACT WARRANTS REHEARING.

The panel's misreading of the Communications Act also raises questions of exceptional importance that warrant rehearing.

### A. The Panel Misconstrued The Statute's "Solely" Requirement.

The panel erred by misinterpreting the requirement that CPNI be limited to information "made available to the carrier by the customer *solely by virtue of the carrier-customer relationship*." 47 U.S.C. § 222(h)(1)(A) (emphasis added).

The Communications Act contemplates two kinds of relationships with customers relevant here. *First* are carrier-customer relationships. A "carrier" means "a telecommunications carrier," 47 U.S.C. § 222(h)(1)(A), which is a "provider of telecommunications services," *id.* § 153(51). "Telecommunications service" refers to traditional "telephone services"—like voice calling—and is "subject to extensive regulation … under Title II." *In re MCP No. 185*, 124 F.4th 993, 997, 1007 (6th Cir. 2025). *Second* are information-service-provider-customer relationships. An "information service" is "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications." 47 U.S.C. § 153(24). Most modern Internet

6

services—like mobile data—qualify as "information services" and are subject to "light regulation under Title I." *MCP No. 185*, 124 F.4th at 999.

Information services and telecommunications services are "mutually exclusive." *Mozilla Corp. v. FCC*, 940 F.3d 1, 19 (D.C. Cir. 2019). They are also activity-based: a provider is a Title II "carrier"—and thus has a "carrier-customer relationship"—"*only to the extent* that it is engaged in providing telecommunications services." 47 U.S.C. § 153(51) (emphasis added); *see also, e.g., FTC v. AT&T Mobility LLC*, 883 F.3d 848, 862 (9th Cir. 2018); *Nat'l Ass'n of Regul. Util. Comm'rs v. FCC*, 533 F.2d 601, 608 (D.C. Cir. 1976) ("one can be a common carrier with regard to some activities but not others"). This reflects a careful balance struck by Congress to avoid "shackling" information services "with onerous Title II regulation." *MCP No. 185*, 124 F.4th at 1004.

The panel failed to give effect to the "solely" language and the activity-based definition of "carrier," improperly expanding the extent to which providers are subject to Title II regulation. Here, the Companies provide customers with "both telecommunications services (voice calls) and information service (internet data)." A31. And the Companies obtained the location data at issue to support *both* services. *See* JA13 (¶ 31), JA299 (¶ 32). Thus, the information was not obtained "solely by virtue of the carrier-customer relationship." 47 U.S.C. § 222(h)(1)(A).

The panel nevertheless offered two unpersuasive rationales for deciding that this information should be CPNI. *First*, it claimed that "the Carriers did not stop being carriers because they were also information-service providers." A32. But if the Companies were acting pursuant to *both* relationships, they could not have obtained the information "*solely*" because of "the carrier-customer relationship." *Second*, the panel observed that the two relationships were established in "a single contract." *Ibid.* That is immaterial because there are still two relationships—even if they were created in one document. If the word "solely" in the statute is to have any meaning, it must apply here.

### B. The Panel Misconstrued The Statute's "Location" Requirement.

Section 222 defines CPNI to reach only "information that relates to the … location … of use of a telecommunications service." 47 U.S.C. § 222(h)(1)(A). The panel erred in interpreting this clause for two reasons.

*First*, the panel held that it does not matter whether "of use" modifies "location." A29. That conclusion relied on an untenably narrow understanding of "use." The panel held that "a customer 'uses' a telecommunications service whenever his or her device connects to the carrier's network," *ibid.*, even where the customer is doing nothing at all. This contradicts Supreme Court precedent: the word "'use' impl[ies] action and implementation," *not* something that is "passive,

passing, or ancillary." *Dubin v. United States*, 599 U.S. 110, 118-19 (2023) (cleaned).

*Second*, the panel erred by placing dispositive weight on the definition of "telecommunication service" without regard for the rest of the statutory text. The panel observed that passive pings with the networks "enable[] the devices to send and receive calls" and thus "mak[e] telecommunications available." A28. And the panel reasoned that because the definition of a "telecommunications service" refers to "the offering of telecommunications," 47 U.S.C. § 153(53), information generated by these pings "relates to the … location … of a telecommunications service." A28 (quoting 47 U.S.C. § 222(h)(1)).

But Section 222 does not end where the panel's quote does. It applies to "telecommunications service *subscribed to by any customer*" and reaches information "made available to the carrier *by the customer*." 47 U.S.C. § 222(h)(1)(A) (emphasis added). In context, information must relate to more than just an "offering." That offering must have been accepted by a *customer*, and that customer must *make available* the information. The statute explains how that happens. "Telecommunications"—and thus the provision of "telecommunications service"—occurs when "*the user*" "specifie[s]" the "points" where he wants to "transmit[ ]" "information of *the user's choosing*." *Id.* § 153(50) (emphasis added). That happens when a user places a call, but does not happen when a device passively

pings a tower.  Because the passive ping does not occur when the "carrier" is "providing telecommunications services," *id.* § 153(51), to a customer, it does not qualify as CPNI.

### C. The Panel's Misreading Contradicts Congressional Intent, Will Burden Carriers, And Will Undermine Consumer Privacy.

The panel held that Section 222 contemplates two tiers of information: (i) "call location" information, and (ii) "all customer location information, regardless of whether the customer is on a call."  A30.  But, as explained above, the latter tier does not appear in the statute.  It is also at odds with Congress's objectives in amending Section 222.

Congress added "location" to the definition of CPNI in 1999 specifically to reach *call* location information.  The reason was straightforward.  The previous 1996 statute did not allow 911 call centers to "locat[e] wireless callers" because they were "mobile," unlike "caller[s]" on "wireline phones" that operated "at a fixed location." S. Rep. No. 106-138, at 2, 7-8 (1999).[3]  So Congress amended Section 222 to facilitate "the provision of *call location information* to emergency service personnel."  *Id.* at 7 (emphasis added); *accord* 47 U.S.C. § 222(d)(4), (f), (g).  To ensure caller privacy, the statute also "provide[d] privacy protection *for the call*

---

[3] Committee reports provide "evidence of how an ordinary reader might have understood the statutory language … around the time of [its] adoption."  *Feliciano v. Dep't of Transp.*, 145 S. Ct. 1284, 1292-93 (2025).

*location information*." S. Rep. No. 106-138, at 2 (emphasis added). There is no suggestion that Congress also intended to create, *sub silentio*, an overarching category of general "location information" for which it would provide protection without exception. Indeed, if Congress *had* intended to protect that information, it would have made little sense to apply that protection solely to telecommunications carriers.

The panel counters that the CPNI definition uses the word "location," while other parts of Section 222 use "call location." A29-30. But the CPNI definition ties "location" to the "use" of a "telecommunications service"—i.e., when the user places a call—so the phrase "call location of use of a telecommunications service" would have been surplusage.

As Petitioners explain, "[t]his statutory question is of exceptional importance," Pet. 18-19, because it will impose significant new burdens on all wireless carriers when complying with the FCC's CPNI regulations. *See* 47 C.F.R. Part 64, Subpart U. The panel's expansive reading of Section 222 subjects all customer location information to the onerous regulatory regime, mandating broad new safeguards and reporting obligations. *See, e.g.* 47 C.F.R. §§ 64.2010; 64.2011.

Moreover, these new burdens will ultimately be for nothing because the panel's new category of protected data applies only to certain providers. This will, paradoxically, *undermine* consumer privacy. As Commissioner Simington noted in

his dissent: "[A]t every moment, any of thousands of unregulated apps may pull …

data indicating location from customer handsets at every moment the device is on."

JA53. "By sending a strong market signal that any alleged violation of Commission

rules regarding CPNI safekeeping (whether or not the rules actually were violated)

can and will result in an outsize fine," Commissioner Simington explained, "we have

effectively choked off one of the only ways that valid and legal users of consent-

based location data services had to access location data for which legal safeguards

and oversight actually exist." *Ibid.*

Then-Commissioner (now Chairman) Carr agreed, observing that "location-

based service (LBS) providers have offered"—and still offer—"valuable services to

consumers, like emergency medical response and roadside assistance." JA50. These

providers now "have simply shifted to obtaining … location information from other

types of entities"—like unregulated data brokers—rather than highly-regulated

providers. *Ibid.*

**CONCLUSION**

This Court should grant panel rehearing or rehearing en banc.

Dated: September 29, 2025          Respectfully submitted,

*/s/ Joshua S. Turner*
Joshua S. Turner
  *Counsel of Record*
Sara M. Baxenberg
Boyd Garriott
Stephen J. Conley
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
Jturner@wiley.law

*Counsel for* Amicus Curiae

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because this brief contains 2,598 words.

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced 14-point Times New Roman font using Microsoft Word.

Additionally, this brief complies with D.C. Circuit Rule 32(b)(1) because when electronically filed in PDF format, the document was generated from the original word-processing file and is fully text searchable.

Dated: September 29, 2025     */s/ Joshua S. Turner*
            Joshua S. Turner

## CERTIFICATE OF SERVICE

I certify that on September 29, 2025, I caused the foregoing to be served upon all counsel of record via the Clerk of Court's CM/ECF notification system.

Dated: September 29, 2025          */s/ Joshua S. Turner*
                                   Joshua S. Turner