## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

SPRINT CORPORATION,
T-MOBILE USA, INC.,

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*.

On Petitions for Review of Orders of
the Federal Communications Commission

## RESPONSE TO PETITIONERS' PETITION FOR PANEL
## REHEARING AND REHEARING EN BANC

D. Adam Candeub
  *General Counsel*

Jacob M. Lewis
  *Associate General Counsel*

Sarah E. Citrin
  *Deputy Associate General Counsel*

Abigail A. Slater
  *Assistant Attorney General*

Adam L. Sorensen
  *Counsel*

Robert B. Nicholson
Matthew A. Waring
  *Attorneys*

FEDERAL COMMUNICATIONS
  COMMISSION

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave. NW
Washington, DC 20530

45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................iii

GLOSSARY ............................................................................ vi

INTRODUCTION ..................................................................... 1

STATEMENT OF THE CASE ...................................................... 2

    A.    Statutory and Regulatory Background ................................. 2

    B.    Factual and Procedural Background ..................................... 4

REASONS FOR DENYING REHEARING ...................................... 8

I.    THE PANEL'S JURY TRIAL RULING DOES NOT
WARRANT REHEARING .......................................................... 8

    A.    Supreme Court Review Would Render Rehearing of the
Jury Trial Issue Unnecessary ................................................. 8

    B.    The Commission's Forfeiture Authority Does Not
Violate the Seventh Amendment or Article III ...................... 9

II.    THE PANEL'S AFFIRMANCE OF THE COMMISSION'S
READING OF THE COMMUNICATIONS ACT AND
ASSESSMENT OF THE FORFEITURE AMOUNT DOES
NOT WARRANT REHEARING ............................................... 14

    A.    The Commission's Statutory Interpretation and Its
Assessment of the Forfeiture Amount Do Not Raise
Issues That Warrant Rehearing ........................................... 14

    B.    The Merits of the Panel's Determination That
Customer Location Information Is CPNI Should Not Be
Reexamined ...................................................................... 16

    C.    The Panel Correctly Rejected Petitioners' Challenge to
the Commission's Forfeiture Assessment............................. 18

CONCLUSION ..................................................................... 21

CERTIFICATE OF COMPLIANCE........................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Action for Children's Television v. FCC*, 59 F.3d 1249
 (D.C. Cir. 1995) ................................................................. 11

*AT&T Inc. v. FCC*, 149 F.4th 491 (5th Cir. 2025) ................... 2, 8, 11, 15

*Capital Traction Co. v. Hof*, 174 U.S. 1 (1899) ....................... 12

*Carpenter v. United States*, 585 U.S. 296 (2018) ................... 15

*Dubin v. United States*, 599 U.S. 110 (2023) .......................... 15

*FCC v. AT&T, Inc.*, No. 25-406 (filed Oct. 2, 2025) ............................. 2, 8

*Indep. Producers Grp. v. Lib. of Cong.*, 792 F.3d 123
 (D.C. Cir. 2015) ................................................................. 20

*Jolly v. Listerman*, 675 F.2d 1308 (D.C. Cir. 1982) ............... 18

*Larionoff v. United States*, 533 F.2d 1167 (D.C. Cir. 1976) ............ 18

*Lorillard v. Pons*, 434 U.S. 575 (1978) .................................. 13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
 606 U.S. 146 (2025) ........................................................... 11

*Meeker v. Lehigh Valley R.R. Co.*, 236 U.S. 412 (1915) ............. 12

*SEC v. Jarkesy*, 603 U.S. 109 (2024) ..................................... 10

*Sprint Corp. v. FCC*, 151 F.4th 347 (D.C. Cir.
 2025)………………………........................6, 7, 8, 9, 10, 11, 12, 13, 15, 17, 19

*United States v. TravelCenters of Am.*, 597 F. Supp. 2d 1222
 (D. Or. 2007)..................................................................... 11

*Verizon Communications Inc. v. FCC*, 156 F.4th 86 (2d Cir.
 2025)............................................... ……..2, 8, 11, 13, 15, 20

*Verizon Communications, Inc. v. FCC*, No. 25-567 (filed Nov. 6, 2025) ................................................................................. 2, 8

**Statutes**

28 U.S.C. § 2342(1) .................................................................. 4

47 U.S.C. § 222(a) .................................................................... 2

47 U.S.C. § 222(h)(1) ........................................................... 3, 16

47 U.S.C. § 402(a) .................................................................... 4

47 U.S.C. § 503(b) ............................................................ 3, 4, 18

47 U.S.C. § 504(a) .......................................................... 4, 10, 11

47 U.S.C. § 504(c) ............................................................ 12, 13

**Rules**

Fed. R. App. P. 40(b) ........................................................... 1, 14

**Regulations**

47 C.F.R. § 64.2010(a) .............................................................. 3

**Administrative Materials**

*In re Sprint Corp.*, 39 FCC Rcd. 4305 (2024) ............................... 4, 5, 17

*In re T-Mobile USA, Inc.*, 39 FCC Rcd. 4350 (2024) .......................... 4, 5

**Other Materials**

Brief for Respondents, *Verizon Communications Inc. v. FCC*, No. 25-567 .......................................................................... 9

Handbook of Practice and Internal Procedures, D.C. Cir. (2025) ........... 1

Petition for a Writ of Certiorari, *FCC v. AT&T Inc.*, No. 25-406 ............. 9

Petition for a Writ of Certiorari, *Verizon Communications Inc. v. FCC*, No. 25-567 .................................................................. 9

Response to Petition, *FCC v. AT&T Inc.*, No. 25-406 ............................. 9

Sprint Petition for Review (ECF No. 2062068) ....................................... 5

T-Mobile Petition for Review, *T-Mobile USA, Inc. v. FCC*, No. 24-1225 (ECF No. 2062080) ...................................................... 6

T-Mobile US, Inc. 2024 SEC Form 10-K ............................................... 16

## GLOSSARY

CPNI        Customer Proprietary Network Information

NAL         Notice of Apparent Liability

## INTRODUCTION

The Federal Communications Commission assessed sizable penalties against two major wireless carriers—petitioners T-Mobile and Sprint—after an investigation revealed that the companies had been selling their customers' location information to third parties without any way of verifying if those disclosures had been authorized by the customers. Petitioners paid the penalties and filed petitions for review in this Court.

Among other things, the companies contended that the penalties violated their constitutional right to a jury trial—even though a jury would have been available to them in a government suit to enforce the penalties if they had left them unpaid. The companies also argued that the location information was not "customer proprietary network information" covered by the Communications Act, and that the Commission's method for assessing the amount of their penalties was erroneous. A unanimous panel of this Court found each of petitioners' arguments lacked merit.

"[E]n banc hearings are not favored" in this Circuit, and rehearing is "rarely granted." D.C. Cir. I.O.P. at p. 58. This case should be no exception. The panel decision does not conflict with any decisions of this

Court or of the Supreme Court, Fed. R. App. P. 40(b)(2)(A)–(B). The effect of its ruling upholding the Commission's statutory interpretation is confined to a single provision of the Communications Act, and its decision correctly rejecting petitioners' challenge to the penalty amount does not extend beyond the particular circumstances of this case.

Finally, although the panel's constitutional ruling conflicts with that of the Fifth Circuit, *see AT&T Inc. v. FCC*, 149 F.4th 491, 497–503 (5th Cir. 2025), it accords with that of the Second Circuit, *see Verizon Communications Inc. v. FCC*, 156 F.4th 86, 105–08 (2d Cir. 2025). Rehearing by this Court would therefore not eliminate any conflict among the circuits. And in any event, the Supreme Court is soon to decide whether to take up the issue, as urged by each of the parties to those decisions. *See FCC v. AT&T, Inc.*, No. 25-406 (filed Oct. 2, 2025); *Verizon Communications, Inc. v. FCC*, No. 25-567 (filed Nov. 6, 2025) (both scheduled for distribution at conference of Jan. 9, 2026). Rehearing should therefore be denied.

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

1. The Communications Act requires "[e]very telecommunications carrier … to protect the confidentiality of propriety

information of, and relating to" its customers. 47 U.S.C. § 222(a). That protection extends to "customer proprietary network information" ("CPNI"), which is "information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service," and "is made available to the carrier by the customer solely by virtue of the carrier–customer relationship[.]" *Id.* § 222(h)(1)(A).

FCC regulations require carriers to "take reasonable measures to discover and protect against attempts to gain unauthorized access to CPNI." 47 C.F.R. § 64.2010(a).

And anyone who "willfully or repeatedly fail[s] to comply" with the Communications Act or "any rule, regulation, or order issued by the Commission" "shall be liable to the United States for a forfeiture penalty." 47 U.S.C. § 503(b)(1)(B).

2. Congress established two alternative procedures by which the FCC may seek monetary penalties. Under the procedure used here, the Commission may issue a "notice of apparent liability" to the alleged violator, who then has an opportunity to respond in writing. *Id.* § 503(b)(4)(A), (C).

When the FCC issues a notice of apparent liability followed by a forfeiture order, the regulated party has two options for obtaining judicial review. First, the party may pay the penalty and petition for review in a court of appeals under 28 U.S.C. § 2342(1). *See* 47 U.S.C. §§ 402(a), 503(b)(3)(A). Alternatively, the party may decline to pay the penalty. To enforce the FCC's order, the Department of Justice must then file a civil suit in federal district court. *See id.* § 504(a). Such a suit "shall be a trial de novo." *Id.*

## B. Factual and Procedural Background

1. Until 2019, Sprint and T-Mobile sold their customers' location data to two third-party aggregators, who, in turn, sold that information to various location-based service providers—*i.e.*, companies that track cellphone users' locations in order to provide information such as maps and traffic alerts. *In re T-Mobile USA, Inc.*, 39 FCC Rcd. 4350, 4353 ¶ 8 (2024) (*T-Mobile Order*). T-Mobile "did not independently verify the customers' consent before providing access to the location data." *T-Mobile Order*, at 5 ¶ 9. Likewise, Sprint did not "notify customers and collect affirmative customer consent" before disclosing customer location information. *In re Sprint Corp.*, 39 FCC Rcd. 4305, 4309 ¶ 9 (2024) (*Sprint Order*). Instead, the carriers relied on contractual agreements

with the aggregators to protect the location data from misuse. News reports in 2018 and 2019 revealed that this system was easily exploited and that customers were being tracked without their consent. *T-Mobile Order* ¶¶ 14–17.

2. In 2020, the Commission issued notices of apparent liability to Sprint and T-Mobile for disclosing customer location data without customer consent and for failing to take reasonable measures to protect against unauthorized access to that information. *Sprint NAL*, 35 FCC Rcd at 1672, 1674 ¶¶ 46, 55; *T-Mobile NAL*, 35 FCC Rcd at 1801, 1804 ¶¶ 49, 58 (JA305, 309, 137, 140). The Commission found that Sprint and T-Mobile had disclosed their customers' location data to location-based service providers without any way of verifying whether those disclosures had been authorized. *Id.*

3. In 2024, after considering Sprint and T-Mobile's responses and completing its investigation, the Commission assessed an $80,080,000 penalty against T-Mobile and a $12,240,000 penalty against Sprint. *T-Mobile Order* ¶ 74; *Sprint Order* ¶ 62. Sprint and T-Mobile voluntarily paid the forfeitures and filed petitions for review in this Court. Sprint Petition for Rev. at 1 n.2 (ECF No. 2062068); T-Mobile

Petition for Rev. at 1 n.\*, *T-Mobile USA, Inc. v. FCC*, No. 24-1225 (ECF No. 2062080).[1]

4. A unanimous panel of this Court denied the petitions for review. *Sprint Corp. v. FCC*, 151 F.4th 347, 353 (D.C. Cir. 2025).

The panel first rejected "the Carriers' argument that the Commission violated their right to a jury trial under the Seventh Amendment." *Id.* at 359. Because "the statutory procedure at issue allowed the Carriers to obtain a jury trial before suffering any legal consequences" from the forfeiture orders, the carriers were never deprived of any jury trial right. *Id.* The companies simply "chose not to wait for such a trial and therefore waived that right." *Id.* Likewise, the panel was "unconvinced that the possibility of nonenforcement" of a Commission forfeiture order "renders the jury-trial option insufficient." *Id.* at 361. "[N]o legal rights are determined and no legal relief is awarded if the Commission declines to enforce an order affirming a [notice of apparent liability]," the panel reasoned. *Id.* "[T]he Carriers would not be required to pay a dime," and "the remote risk of reputational

---

[1] The two companies merged in 2020. *See* Petitioners' Opening Br. at i n.1.

harm" from unenforced, unlitigated orders does not implicate a constitutional right.  *Id.* at 361–62.

Next, the panel rejected the carriers' argument that customer location data was not CPNI covered by the Communications Act.  The panel explained that the information "plainly 'relates to the ... location ... of a telecommunications service,' 47 U.S.C. § 222(h)(1)," because it "was generated when customer devices connected to the nearest cell tower," thus enabling a "telecommunications service."  *Id.* at 363–64.  And the information "was 'made available' to the Carriers 'solely by virtue of the carrier-customer relationship,' 47 U.S.C. §  222(h)(1)," because it "was the product of the Carriers' relationship with their customers."  *Id.* at 364.

Finally, the panel concluded that the Commission's determination "that the Carriers committed separate violations for each third party that accessed [the improperly disclosed data] in the absence of adequate safeguards" was "reasonable."  *Id.* at 369.  The carriers' own practices "implicitly recognized that every [third party] that accessed customer data in the absence of reasonable safeguards posed an independent danger."  *Id.*  And to the extent that petitioners had attempted to argue that "their conduct amounted to only a single 'failure to act' within the

meaning of the statute," the panel found they had forfeited that argument. *Id.* at 369 & n.6.

## REASONS FOR DENYING REHEARING

### I. THE PANEL'S JURY TRIAL RULING DOES NOT WARRANT REHEARING

#### A. Supreme Court Review Would Render Rehearing of the Jury Trial Issue Unnecessary

Respondents do not dispute that the panel's jury trial ruling conflicts with that of the Fifth Circuit in *AT&T*, 149 F.4th at 497–503 (although the panel's decision agrees with the Second Circuit's ruling in *Verizon*, *see* 156 F.4th at 105–08). The jury trial issue does not, however, warrant rehearing.

As explained in respondents' motion for abeyance (ECF No. 2146446), the constitutional question at issue in this case is currently before the Supreme Court in a pair of petitions for writs of certiorari involving two other wireless carriers. *See FCC v. AT&T Inc.*, No. 25-406 (filed Oct. 3, 2025), and *Verizon Communications Inc. v. FCC*, No. 25-567 (filed Nov. 6, 2025). Indeed, petitioners acknowledge that the forfeiture order at issue in *AT&T* is "materially identical" for purposes of its jury trial arguments. *See* Rehearing Petition at 1.

Those petitions for a writ of certiorari—which have been distributed for the Supreme Court's conference scheduled for January 9, 2026—present a strong case for Supreme Court review: the circuits are in conflict, and all parties in those cases agree that Supreme Court review is warranted.[2] If the Supreme Court grants either or both of the petitions, its review would render this Court's rehearing on the jury trial question unnecessary.

## B. The Commission's Forfeiture Authority Does Not Violate the Seventh Amendment or Article III

Even if the Supreme Court were to deny review in *AT&T* and *Verizon*, rehearing by this Court could not eliminate any conflict among the circuits. In any event, the panel's jury trial ruling was correct.

As the panel ably explained, petitioners were never deprived of their jury trial right because "the statutory procedure at issue allowed the Carriers to obtain a jury trial before suffering any legal consequences." 151 F.4th at 359. That straightforward conclusion

---

[2] *See* Petition for a Writ of Certiorari, *FCC v. AT&T Inc.*, No. 25-406, at 15–18; Response to Petition, *FCC v. AT&T Inc.*, No. 25-406, at 14–15; Petition for a Writ of Certiorari, *Verizon Communications Inc. v. FCC*, No. 25-567, at 29–35; Brief for Respondents, *Verizon Communications Inc. v. FCC*, No. 25-567, at 5.

resolves this issue, and petitioners' further arguments on rehearing lack merit.

The panel did not "sidestep[]" *SEC v. Jarkesy*, 603 U.S. 109. Pet. 7. The critical difference between that case and this one is that the subject of enforcement in *Jarkesy* had no option to pursue a de novo jury trial in district court. Where, as here, the regulated party was entitled to a de novo jury trial, the nature of the penalty, any analogy to common law, and the applicability of the public rights exception, *see* Pet. 7–8, are all beside the point. The panel thus did not err by declining to reach those questions. 151 F.4th at 359 & n.2 ("Even if the Seventh Amendment applies, it was not violated because the Carriers had the opportunity to put their case before a jury before any 'legal rights' would have been 'determined' or any 'legal relief' awarded." (citation omitted)).

It is likewise irrelevant that "FCC forfeiture orders are final agency actions." Pet. 8. Forfeiture orders are final in the sense that they are final *before the agency*, not that they are unreviewable pronouncements of legal consequences, as petitioners suggest. As the panel recognized—and as Congress made clear in 47 U.S.C. § 504(a)—subjects of enforcement are "'entitled,' by statute, 'to a trial de novo in district court'"

if they so choose. 151 F.4th at 354 (quoting *Action for Children's Television v. FCC*, 59 F.3d 1249, 1261 (D.C. Cir. 1995)).

Petitioners are simply incorrect, Pet. 9, that some district courts may limit their review in a Section 504(a) suit to something less than the statutory "de novo trial." The only court of appeals to propose such a limitation subsequently withdrew that suggestion in this exact context. *See AT&T*, 149 F.4th at 503 & n.16 (amending opinion to excise this reasoning). And for good reason: the Supreme Court recently clarified that "[i]n an [FCC] enforcement proceeding, a district court must independently determine … whether the agency's interpretation of a statute is correct." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025); *see also Verizon*, 156 F.4th at 107 ("Textually speaking, 'trial de novo' plainly indicates that the parties would start afresh in federal court.").

Petitioners' reliance on a single, unpublished, out-of-circuit magistrate judge opinion predating *McLaughlin*, Pet. 9 (citing *United States v. TravelCenters of Am.*, 597 F. Supp. 2d 1222, 1227 (D. Or. 2007)), is thus misplaced. Petitioners' complaint of an "untenable reality" where "[c]arriers must either give up their jury-trial rights by seeking § 402(a)

direct review, or risk DOJ filing a § 504 collection action in a forum that prohibits legal challenges," Pet. 13, is wholly unsupported under current law.

Petitioners' objection that "an *after-the-fact* jury trial cannot replace an 'initial adjudication' in federal court," Pet. 10, is flatly inconsistent with long-settled precedent. The Supreme Court has twice held that Congress may commit the initial adjudication of a civil case to a non-Article III tribunal, so long as the parties may obtain de novo review in an Article III court with a jury. *See Meeker v. Lehigh Valley R.R. Co.*, 236 U.S. 412 (1915); *Capital Traction Co. v. Hof*, 174 U.S. 1 (1899). As those cases illustrate, the Constitution "does not prescribe at what stage of an action a trial by jury" must occur, and that a statute may authorize such a trial "for the first time upon appeal" from an initial decision. *Hof*, 174 U.S. at 23.

Petitioners claim that an unenforced forfeiture order will have adverse "real-world impacts." Pet. 9. But as the panel recognized, 151 F.4th at 361, the Communications Act prohibits the Commission from using a liability finding "in any other proceeding before the Commission, to the prejudice of the person to whom such notice was issued" unless

certain conditions are met. 47 U.S.C. § 504(c). Petitioners misread that provision to apply only to initial notices of apparent liability, not forfeiture orders. But as the statute makes clear, the Commission may rely on the findings underlying the forfeiture only when "the forfeiture has been paid, or a court of competent jurisdiction has ordered payment of such forfeiture." *Id.*

Nor is the panel's rejection of petitioners' claims of reputational harm "in tension with" *Verizon*. Pet. 2; *see id.* at 12. Both decisions recognize that a carrier's jury-trial rights are not implicated by the reputational impact of an initial agency determination because "the Seventh Amendment is implicated when legal rights are to be determined, and legal relief awarded." 151 F.4th at 362 (citing *Lorillard v. Pons*, 434 U.S. 575, 583 (1978)); *see also Verizon*, 156 F.4th at 106 ("[W]e fail to see how [Verizon's reputational concerns] implicate the Seventh Amendment, which requires a jury trial only upon an effort to collect payment of monetary damages.").

## II. THE PANEL'S AFFIRMANCE OF THE COMMISSION'S READING OF THE COMMUNICATIONS ACT AND ASSESSMENT OF THE FORFEITURE AMOUNT DOES NOT WARRANT REHEARING

### A. The Commission's Statutory Interpretation and Its Assessment of the Forfeiture Amount Do Not Raise Issues That Warrant Rehearing

There is also no reason to reconsider the panel's affirmance of the Commission's interpretation of Section 222, or of the Commission's calculation of the specific penalties assessed in this case. Fed. R. App. P. 40(b)(2)(A)–(D). The Second Circuit, the only other court to consider the statutory interpretation question, reached the same conclusions, and petitioners' challenge to the assessment of the amount of the forfeiture (like the one rejected by the Second Circuit) has no significance beyond the circumstances here.

Petitioners' assertion, Pet. 16–17, that the panel's statutory analysis "conflicts with *Carpenter* [*v. United States*, 585 U.S. 296 (2018)] and *Dubin* [*v. United States*, 599 U.S. 110 (2023)]" is wholly without merit. Neither of those decisions purported to interpret the Communications Act, let alone Section 222 or the statutory definition of CPNI. The Supreme Court's background discussion in *Carpenter* of how cell site information is generated "even if the owner is not using one of

the *phone's* features," has no bearing on the panel's statutory analysis of when "a customer 'uses' a *telecommunications service*" within the meaning of the Communications Act. *Compare Carpenter*, 585 U.S. at 300–01 (emphasis added), *with* 151 F.4th at 364 (emphasis added). *Dubin*'s discussion of the word "use" is no help to petitioners either—the decision simply notes that the term "'use' takes on different meanings depending on context.'" 599 U.S. at 118. Petitioners' attempt to manufacture a conflict with these decisions falls flat.

Much more relevant is *Verizon*, where the Second Circuit in considering a materially identical forfeiture order reached the same conclusions as the panel here. *See Verizon*, 156 F.4th at 94–98, 101–05 (rejecting carrier's equivalent arguments). There is no daylight between the D.C. and Second Circuits on those questions, and the Fifth Circuit declined to reach them. *See AT&T,* 149 F.4th at 497 & n.5.

Petitioners likewise fail to demonstrate any far-reaching importance in reviewing the statutory definition of CPNI or the calculation of penalties here. This case concerns only one particular use of location data: third-party location-based service programs, which all major carriers have now ceased to operate. And while petitioners point (in bold and italics, Pet. 19) to the size of the penalties, they nowhere

suggest that the outcome of this case would materially affect their business, which in 2024 generated more than $80 billion in revenue.  *See* T-Mobile US, Inc., Annual Report  (Form 10-K) (Jan. 31, 2025), *available at* https://perma.cc/QH7D-AENB.

### B. The Merits of the Panel's Determination That Customer Location Information Is CPNI Should Not Be Reexamined

On the merits, petitioners fail to demonstrate that the panel did not have the better reading of the statute.  To qualify as CPNI covered by the Communications Act, information must have two relevant features: First, it must "relate[] to the quantity, technical configuration, type, destination, *location*, and amount of use of a telecommunications service."  47 U.S.C. § 222(h)(1) (emphasis added).  And second, it must be "made available to the carrier by the customer solely by virtue of the carrier-customer relationship."  *Id.*

1.  The panel found that the customer location information at issue here "relates to the … location ... of a telecommunications service" because it "was generated when customer devices connected to the nearest cell tower in Sprint or T-Mobile's networks to gain access to a telecommunications service—i.e., the ability to send and receive calls." 151 F.4th at 363–64.

The panel also found that customer location information "was 'made available' to the Carriers 'solely by virtue of the carrier-customer relationship.'" *Id.* at 364. Because customers used "the Carriers' cell towers to be able to make and receive phone calls, and the cell towers tracked the location of the customers' devices," the location information "was the product of the Carriers' relationship with their customers." *Id.* And it was "solely" so because "it did not come from a third party or through some other means." *Id.*

2.    Citing the dissenting statements of then-Commissioner Carr, petitioners point out that these determinations raise debatable questions of law.    Pet. 14–19.    The statute's requirement that the location information relate to the "use of a telecommunications service," might suggest that the statute covers only that location information generated while the customer is "making or receiving a voice call." *E.g.*, *Sprint Order*, 39 FCC Rcd at 4346 (Dissent of Commissioner Carr) (emphasis omitted).    Likewise, the statute could be read to leave open the question whether the location information was made available to the carrier "solely by virtue of" its "carrier-customer relationship" when it "could have obtained the location even in the absence of a call, and even in the absence of a voice plan." *Id.*

But those issues do not fatally undermine the panel's reading. The panel reasoned that "a customer 'uses' a telecommunications service whenever his or her device connects to the carrier's network for the purpose of being able to send and receive calls," not just when the customer is making a call. 151 F.4th at 364. Congress opted to use the broad term "location," not the narrower term "call location," in its definition of CPNI. *Id.* And Sprint and T-Mobile "did not stop being carriers because they were also information-service providers." *Id.* at 366. In any event, "mere disagreement with" a panel decision does not warrant rehearing en banc. *Jolly v. Listerman*, 675 F.2d 1308, 1311 (D.C. Cir. 1982) (Robinson, J., concurring in denial of rehearing en banc); *Larionoff v. United States*, 533 F.2d 1167, 1191 (D.C. Cir. 1976) (statement of McGowan, J., explaining denial of rehearing).

## C. The Panel Correctly Rejected Petitioners' Challenge to the Commission's Forfeiture Assessment

Finally, the panel correctly rejected petitioners' argument that the Commission exceeded the statutory maximum penalty of $2,048,915 for "any single act or failure to act," 47 U.S.C. § 503(b)(2)(B), by declining to treat the companies' serial disclosures of location data to third parties as a single, continuing violation. 151 F.4th at 368–69.

As the panel determined, "it was reasonable for the Commission to conclude that each third-party relationship in which the Carriers provided [customer location information] without adequate safeguards formed the basis of a distinct violation." *Id.* at 369. After all, "the Carriers' own certification procedures … imposed contractual obligations on third parties to safeguard CPNI on a relationship-by-relationship basis," "implicitly recogniz[ing] that every [third party] that accessed customer data in the absence of reasonable safeguards posed an independent danger of CPNI misuse." *Id.*

Petitioners do not challenge the panel's endorsement of the reasonableness of the Commission's view of the facts. Instead, petitioners challenge the panel's conclusion that they forfeited a related statutory argument: "that their conduct amounted to only a single 'failure to act' within the meaning of the [Communications Act]." 151 F.4th at 369 n.6; *see* Pet. 19–21.

As the panel explained, however, "the thrust of" petitioners' briefing was to argue "the way the Commission viewed the facts was unreasonable." 151 F.4th at 369 n.6; *see, e.g.*, Pet. Br. 57–61; Pet. Reply 27–31. At most, petitioners "gesture[d]" at an argument under the statute, and even then, they did so "in only 'a cursory fashion, without'

real analysis of the 'relevant statutory text' or any 'references to relevant case law or other authority.'" 151 F.4th at 369 n.6 (citing *Indep. Producers Grp. v. Lib. of Cong.*, 792 F.3d 123, 141 (D.C. Cir. 2015)); *see* Pet. Br. 65–66; Pet. Reply 32–33; *see also Verizon*, 156 F.4th at 102 (explaining that the Communications Act gives the Commission "discretion" to define a violation).

The panel's evaluation of petitioners' briefing was entirely appropriate. In any event, its determination that petitioners had forfeited any argument that their conduct amounted to a single violation under the Communications Act turns on the particulars of how the case was presented to it, and raises no questions of broader or lasting significance warranting rehearing.

## CONCLUSION

The Court should deny the petition for rehearing and rehearing en banc.

January 6, 2026

Respectfully submitted,

/s/ *Adam L. Sorensen*

D. Adam Candeub
   *General Counsel*

Jacob M. Lewis
   *Associate General Counsel*

Sarah E. Citrin
   *Deputy Associate General Counsel*

Abigail A. Slater
   *Assistant Attorney General*

Adam L. Sorensen
   *Counsel*

Robert B. Nicholson
Matthew A. Waring
   *Attorneys*

FEDERAL COMMUNICATIONS
   COMMISSION

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave. NW

45 L Street NE
Washington, DC 20554
(202) 418-1740

Washington, DC 20530

fcclitigation@fcc.gov

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1):

    ☒   this document contains <u>3,895</u> words, *or*

    ☐   this document uses a monospaced typeface and contains <u>    </u> lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒   this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word for Office 365</u> in <u>14-point Century Schoolbook</u>, *or*

    ☐   this document has been prepared in a monospaced spaced typeface using <u>        </u> with <u>      </u>.

*/s/ Adam L. Sorensen*
Adam L. Sorensen
*Counsel for Respondents*
